UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                              :

KWANGMIN AHN,                    :
                              :

                Plaintiff,    :           **REPORT AND**

                              :           **RECOMMENDATION**

          -against-       :

SUN CLEANERS INC and WON KOOK CHO,  :       19-CV-5919 (DLI) (PK)
                              :

            Defendants.   :
                              :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

On October 22, 2019, Kwangmin Ahn ("Plaintiff") commenced an action against Sun Cleaners Inc ("Sun Cleaners") and Won Kook Cho ("Cho," and collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. Law § 650 *et seq.* ("NYLL"). (*See* "Compl.," Dkt. 1.) Plaintiff's first motion for default judgment was denied for improper service. (Order dated March 1, 2021 (adopting Report and Recommendation, Dkt. 12).) Plaintiff has now filed a renewed motion for default judgment against Defendants (the "Amended Motion"). (Dkt. 22.)

The Honorable Dora L. Irizarry referred the Amended Motion to the undersigned for a report and recommendation. For the reasons stated below, the undersigned respectfully recommends that the Amended Motion be GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.**     **Factual History**

The following facts are taken from the Complaint, the Affidavit of Kwangmin Ahn ("Ahn Aff.," Dkt. 22-2), and Plaintiff's testimony at the Inquest held on July 15, 2021 (*see* Transcript of July 15, 2021 Inquest, "Tr.," Dkt. 25).

### A.    Plaintiff's Employment with Defendants

Sun Cleaners is a New York corporation with annual gross volume of sales not less than $500,000.  (Compl. ¶ 41, Tr. at 11:9-24.)  Sun Cleaners had "10 to 11 employees," including Plaintiff.  (Tr. at 7:24-8:8; 11:25-12:4.)  Cho owns "at least 5 drop-off dry cleaners and one plant, located throughout New York City" (Compl. ¶ 11), and is President of Sun Cleaners (Compl. ¶ 44).

From December 31, 2017 to December 29, 2018,[1] Defendants employed Plaintiff as a delivery worker.  (Compl. ¶ 11; Ahn Aff. ¶ 9.)  Cho hired, managed, and supervised Plaintiff, and established and administered the terms and conditions of his employment.  (Compl. ¶¶ 11, 24.)  Plaintiff's duties included driving the company's van, picking up garments from five different drop-off stores in Manhattan and Astoria, and performing manual labor.  (Compl. ¶¶ 11, 15.)

### B.    Plaintiff's Hours and Schedule

Plaintiff regularly worked six days a week.  (Compl. ¶ 8.)  He worked for Defendants "in excess of ten (10) hours per day and forty (40) hours per week."  (Compl. ¶ 7.)  From Monday to Friday, Plaintiff began work at 6:20 a.m. and ended at 6:30 p.m. to 7:30 p.m., approximately 12 to 13 hours a day.  (Compl. ¶ 8; Tr. at 5:4-9.)  On Saturdays, Plaintiff began work at 6:20 a.m. and ended at 5:30 p.m. to 6:00 p.m., approximately 11 to 11.5 hours a day.  (Compl. ¶ 8; Tr. at 8:19-9:2.)  Plaintiff did not work on Sundays.  (Tr. at 5:13-15.)

### C.    Plaintiff's Wages

From the beginning of Plaintiff's employment through May 2018, Plaintiff was paid $800.00 per week by check and cash.  (Compl. ¶ 9; Tr. at 4:19-20.)  From June 2018 until his employment ended, Plaintiff was paid $850 per week by check and cash.  (Compl. ¶ 9; Tr. at 4:20-21; 5:24-6:1; 8:9-

---

[1] Although the Complaint states that Plaintiff "performed work for Defendants" "from December 2017, until December 31, 2018," (Compl. ¶ 7), Plaintiff states in his Affirmation that he "worked for 1 year," "from December 31, 2017, until December 29, 2018" (Ahn Aff. ¶ 6).  The undersigned uses the start and end dates in Plaintiff's Affirmation.

18.)[2]  Plaintiff's pay remained the same "regardless of the hours" he worked.  (Tr. at 4:22-5:1.)
Plaintiff's "did not get hourly wages" and his "wage was based on a week."  (Tr. at 9:13-14.)  Plaintiff
understood his pay to compensate him for however many hours he would work in a week.  (Tr. at
9:15-21.)

Defendant never paid Plaintiff overtime compensation or spread of hours pay.  (Compl. ¶ 9.)

**D.     Defendants' Recordkeeping**

Defendants failed to provide Plaintiff with any wage notice upon hiring or afterward, or any
wage statements or pay stubs along with his weekly earnings.  (Compl. ¶¶ 68, 69, 73; Tr. at 6:2-12.)

**II.    Procedural Background**

Plaintiff filed the Complaint on October 22, 2019.  (Dkt. 1.)  After Defendants failed to appear,
Plaintiff filed the First Motion for Default Judgment (Dkt. 8), which was denied for improper service
(*see* Order dated March 1, 2021 (adopting Report and Recommendation, Dkt. 12)).

On February 20 and 24, 2021, Plaintiff properly served Cho and Sun Cleaners, respectively.
(Dkts. 17, 17-1.)  Defendants failed to appear, and the Clerk of Court entered a certificate of default
against both Defendants on April 2, 2021. (Dkt. 19.)  Plaintiff filed the Amended Motion for Default
Judgment on May 20, 2021, with supporting documents.  (Dkts. 21, 22.)  The Amended Motion seeks
damages for overtime violations under the FLSA and NYLL, spread of hours pay under the NYLL,
damages for failure to provide wage notice and wage statements under NYLL §§ 195(1) and 195(3),
liquidated damages, prejudgment and post-judgment interest, and attorneys' fees and costs.

The Court held an Inquest by video conference on July 15, 2021, at which Plaintiff testified.
Although Defendants were notified of the Inquest, they did not appear.  (Dkt. 24.)

---

[2] The Complaint alleges that Plaintiff began receiving $850 per week in May 2018 (Compl. ¶ 9), but at the
Inquest Plaintiff testified that he started receiving $850 in June 2018 (Tr. at 4:19-21; 5:24-6:1; 8:9-18).  The
undersigned credits Plaintiff's testimony.

**DISCUSSION**

**I.      Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

A plaintiff must take several steps before the court will grant default judgment.  The plaintiff must demonstrate proper service of the summons and complaint.  *See Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).  The court "may first assure itself that it has personal jurisdiction over the defendant."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation marks and citation omitted).  The plaintiff must establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor."  *Finkel*, 577 F.3d at 84.  However, a default is "not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158.  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits."  *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27,

4

2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (internal quotation marks, citations, and alterations omitted)). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the recordkeeping requirements] of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established …." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction

### A.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B.    Service on the Defendants

Plaintiff properly served Sun Cleaners through the New York Secretary of State. *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 17; Declaration of Ryan Kim, "Kim Decl.," Dkt. 22-1, ¶ 7.) Plaintiff properly served Cho by delivering a copy of the Summons and Complaint to Cho at his last known residence. N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e). (Dkt. 17-1; Kim Decl. ¶ 8.)

### C.    Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Because Sun Cleaners is a New York corporation (Compl. ¶ 41) and it was properly served with the Summons and Complaint (Dkt. 17), the Court has personal jurisdiction over it.

New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 619 n.1 (2d Cir. 2016). Cho's last known address is in Flushing, New York. (*See* Kim Decl. ¶ 8.) The state also has specific jurisdiction over individuals who "'transact[ ] any business within the state' so long as 'the cause of action arises from that transaction.'" *Francis*, 2018 WL 4292171, at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60). Cho hired, managed, supervised, established, and administered the terms and conditions of Plaintiff's employment for Sun Cleaners in New York. (Compl. ¶¶ 11, 24, 25.)

The Court therefore has personal jurisdiction over Defendants.

## III.   Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of his Amended Motion, Plaintiff included a notice of motion (Dkt. 22), a memorandum of law ("Pl. Mem.," Dkt. 22-3), a copy of the Complaint (Ex. 1 to Kim Decl., Dkt. 22-1), proof of service (Ex. 2 to Kim Decl., Dkt. 22-1), a proposed judgment (Dkt. 22-2), and proof of mailing of the Amended Motion to Defendants (Dkts. 22-4). Plaintiff also filed a copy of the Clerk's

certificate of default (Dkt. 24 at 2) and an affidavit indicating that Cho is not an infant or in the military (Ex. 2 to Kim Decl. at 4).[3]

These filings comply with Local Civil Rules 7.1 and 55.2.

## IV.   Liability under the FLSA and NYLL

### A.   Statute of Limitations

The FLSA and the NYLL have different statutes of limitations. The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* Under the NYLL, the statute of limitations is six years. *See* NYLL §§ 198(3), 663(3).

Plaintiff filed the Complaint on October 22, 2019. (*See* Compl.) Plaintiff alleged violations of the FLSA and NYLL beginning with his employment from December 2017 and continuing through the end of his employment in December 2018. (*See* Compl. ¶ 7.) Accordingly, all his claims fall within the statute of limitations periods of both the FLSA and the NYLL.

### B.   Employment Relationship under the FLSA

The FLSA is to be "construed … liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (internal quotation marks and citations omitted). To plead a cause of action under the

---

[3] Although Plaintiff's counsel's Declaration does not specifically state that Cho is not incompetent, it does state that "Defendant Won Kook Cho called my office several times and we had a conference to discuss a resolution." (Kim Decl. ¶ 5.) There is no indication that Cho is incompetent.

FLSA, Plaintiffs must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

    1. <u>*Whether Defendants are Employers*</u>

  The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013). "The Second Circuit 'has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Id.* at 104 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008)). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT)(RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

  A defendant is an FLSA employer if it meets the criteria for either enterprise or individual coverage. *See Rowe*, 2019 WL 4395158, at *4. Plaintiff did not seek to establish individual coverage. (*See* Tr. at 11:20-24.)

  The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and … whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication

among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (internal quotation marks and citation omitted).

The Complaint alleges that Sun Cleaners is engaged in the business of dry cleaning, had employees engaged in commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and had annual sales over $500,000 per year. (Compl. ¶¶ 22, 42.) Sun Cleaners had "10 to 11 employees," including Plaintiff. (Tr. at 7:24-8:8; 11:25-12:4.) These allegations satisfy the enterprise coverage test, and Sun Cleaners is an employer for FLSA purposes. *See Kim v. WJ Grp. Inc.*, No. 18-CV-3833 (ILG)(RML), 2019 WL 1433080, at *3 (E.D.N.Y. Mar. 29, 2019) (on motion to dismiss, noting, "It would be quite exceptional indeed for any dry cleaners in this day and age to lack even the minimal nexus to interstate commerce required under the FLSA.")

Cho is also an employer for FLSA purposes. "The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees …." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the "economic realities" test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *See Irizarry*, 722 F.3d at 110. The factors that a court may consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).   However, "[t]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).   Here, Cho hired and fired employees, determined their work schedules, and determined the rates and methods of payment. (Compl. ¶¶ 11, 24-31.)   Cho is also President of Sun Cleaners.   (Compl. ¶ 44.)

Defendants are therefore employers within the meaning of the FLSA.

### 2. *Whether Plaintiff was an Employee*

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer."   29 U.S.C. § 203(e)(1).   Plaintiff alleges that Defendants held him "out as an employee" and "paid [him] as their employee" (Compl. ¶¶ 35, 36), and that Defendant Cho hired Plaintiff as a delivery worker (Compl. ¶ 11).   Plaintiff further testified that he worked for Sun Cleaners and Cho. (Tr. at 3:12-20.)   Plaintiff was an employee for FLSA purposes.

### 3. *Whether any FLSA Exemption Applies*

Finally, Plaintiff must show that he is not exempt from the FLSA's protections.   *Fermin*, 93 F. Supp. 3d at 32.   The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), including those "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), defined as one "whose primary duty is management of the enterprise … and who has the authority to hire or fire other employees …," *see* 29 C.F.R. § 541.100.   There is also an exemption from the FLSA's overtime requirements for

> any employee employed as a driver or driver's helper making local deliveries, who is compensated for such employment on the basis of trip rates, or other delivery plan, if the Secretary [of Labor] shall find that such plan has the general purpose and effect of reducing hours worked by such employees to, or below, the maximum workweek applicable to them ….

29 U.S.C. § 213(b)(11).  Although Plaintiff worked as a driver for Defendants, he was not compensated on the basis of trip rates or other delivery plan subject to the requisite finding by the Secretary of Labor.  Therefore, no FLSA exemption applies.

### C.      Whether the NYLL Applies

To prevail on a NYLL claim, Plaintiffs must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment."  NYLL § 190.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).  Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of "employer" status).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, Defendants are employers within the meaning of the NYLL, and the NYLL applies.

### D.      Plaintiff's Overtime Claim

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  To support "a reasonable inference" that he or she worked more than 40 hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours

of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata,* 723 F.3d at 201.  *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over 40 hours a week established an overtime claim).

The Complaint alleges that Plaintiff worked "11 to 13 hours a day and about 74 hours per week," and Plaintiff testified that he worked 12 to 13 hours per day, with slightly fewer hours on Saturday.  (Compl. ¶ 8; Tr. at 5:2-20; 8:22-9:2.)  Defendants paid Plaintiff a set weekly salary and never paid him time-and-a-half for the hours he worked over forty.  (Compl. ¶ 21; *see* Tr. at 4:22-5:1.)  Thus, Plaintiff has established Defendant's liability for failure to pay Plaintiff overtime under both the FLSA and the NYLL.  *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL).

### E.     Spread of Hours Claim

Pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required for any day in which … the spread of hours exceeds 10 hours."  The spread of hours is defined as "the interval between the beginning and end of an employee's work day," including "working time plus time off for meals plus intervals off duty."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.18.  Employees who make more than the minimum wage are not entitled to spread of hours pay.[4]  *See Heras v. Metro. Learning Inst., Inc.*, No. 19-CV-2694 (DLI)(RLM), 2021 WL 66288, at *6 (E.D.N.Y. Jan. 7, 2021) (collecting cases); *see also Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, No. 10-CV-1741

---

[4] An exception is that employees employed in the hospitality industry are entitled to spread of hours pay regardless of their wage.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d).

(DLI)(JO), 2012 WL 1004848, at *8 (E.D.N.Y. Mar. 23, 2012) ("[T]he majority of courts of this circuit that have considered this issue" have found that "by its plain language, the spread of hours statute applies only to employees making minimum wage.").

The prevailing minimum wage during the entire period of Plaintiff's employment was $13.00 per hour for New York City employers with at least 11 employees.  NYLL § 652(a)(i).  Plaintiff was paid $800 or $850 per week.  Plaintiff argues—and the undersigned agrees, *see infra*—that the Court should divide this weekly salary by the 40 hours it was presumptively intended to cover.  Therefore, Plaintiff's hourly rate of pay is $20.00 or $21.25, greater than the minimum wage.

Because Plaintiff's regular rate of pay exceeded the applicable minimum wage throughout his employment with Defendants, he is not entitled to spread of hours pay.

F.    **Wage Statement and Wage Notice Claims**

Plaintiff alleges that Defendants violated NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions.  (Dkt. 22-3 at 13-14.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Defendants failed to provide Plaintiff with any wage notice upon hiring or afterward, or any wage statements or pay stubs along with his weekly earnings.  (Compl. ¶¶ 68, 69, 73; Tr. at 6:2-12.) Defendants therefore violated NYLL §§ 195(1) and 195(3).

## V.      Requested Relief

### A.      Damages

#### 1.      *Overtime Damages*

Both the NYLL and the FLSA provide for overtime pay at one and one-half times the employee's "regular rate of pay." *Nakahata*, 723 F.3d at 200.  Under the NYLL, for non-hospitality industry workers, if paid by salary, the regular rate is the total weekly salary divided by the total hours worked during the week.  N.Y. Comp. Codes R. & Regs. tit 12, § 142-2.16.  Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the [weekly] salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113.  Both the NYLL and the FLSA, however, carry a rebuttable presumption that a weekly salary covers only the first 40 hours of work, unless the parties have agreed otherwise.  *See Pinovi v. FDD Enters.*, No. 13 Civ. 2800 (GBD)(KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015) (collecting cases); *see also Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) ("[T]he employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours.").

"When an employer is unable to produce a written employment agreement or memorandum summarizing an oral agreement, 'the Court must infer the terms of [the parties'] agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record.'" *Jiao v. Shi Ya Chen*, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *13 (E.D.N.Y. Mar. 30, 2007) (alteration in original) (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002)).  The court's analysis must be "'based on the testimonial and documentary evidence in the record' … demonstrat[ing] that both parties understood what the agreement was.  Evidence of only one party's intention or understanding will not be enough." *Saldarriaga Saldarriaga v. IND Glatt, Inc.*, No. 17-CV-02904 (PKC) (SMG), 2019 WL 1332887, at *4 (E.D.N.Y. Mar. 25, 2019) (citations omitted) (quoting *Moon*, 248 F. Supp. 2d at 206).

Defendants have not responded to any of Plaintiff's allegations (and have failed to appear in this action altogether).  Plaintiff testified:

> There was no set hours of work.  Whenever my work was done was when I had to go home. … There was not a set time where I was supposed to go home, so we didn't talk about it. … I did not get hourly wages.  My wage was based on a week. … The type of work I do, there's no set work hours, so I did not really think about the concept of how many hours I was supposed to work.

(Tr. at 9:13-14; 9:19-21.)  There is no evidence of a mutual and "explicit understanding between the employer and employee as to regular and overtime rates."  *Amaya v. Superior Tile and Granite Corp.*, No. 10 Civ. 4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).  To the contrary, Plaintiff's understanding was that he had to complete his work, however many hours it took.

Because the undersigned cannot infer the existence of an agreement otherwise, the presumption remains that Plaintiff's weekly salary covered only his first 40 hours worked.   Thus, Plaintiff's regular rate of pay is his weekly salary divided by 40 hours.  For the workweeks from December 31, 2017 through June 2, 2018, he received $800.00 per week, for a regular rate of $20.00 per hour.  For the workweeks from June 3, 2018 through December 29, 2018, he received $850.00 per week, for a regular rate of $21.25 per hour.

Plaintiff's weekly overtime damages are 150% of his regular rate of pay multiplied by the number of hours worked over forty each week.

The following table sets forth those calculations:

| Time Period | Number of Weeks | Regular Rate | Overtime Rate | Overtime Hours Per Week[5] | Weekly Overtime Due | Overtime Due This Period |
|---|---|---|---|---|---|---|
| Dec. 31, 2017 to June 2, 2018 | 22 | $20.00 | $30.00 | 34 | $1,020.00 | $22,440.00 |
| June 3, 2018 to Dec. 29, 2018 | 30 | $21.25 | $31.88 | 34 | $1,083.92 | $32,517.60 |
| | | | | | Total | $54,957.60 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$54,957.60** in overtime damages.

2. _Spread of Hours Damages_

Because there is no liability for spread of hours, as discussed above, Plaintiff is not entitled to spread of hours damages.

3. _Wage Notice and Wage Statement Damages_

Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-b).  Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorneys' fees.  NYLL § 198(1-d).

Because Plaintiff never received wage notice or wage statements from Defendants, and because Plaintiff worked for Defendants for more than 100 days, he is entitled to the maximum damages under both provisions.  _See, e.g._, _Jianmin Jin v. Shanghai Original, Inc._, No. 16-cv-5633 (ARR)

---

[5] Based on Plaintiff's allegation that he worked Monday to Friday from 6:20 a.m. to 6:30 p.m. or 7:30 p.m. (_see_ Compl. ¶ 8; Tr. at 5:4-9), he worked an average of 12.66 hours per weekday.  On Saturdays, he worked from 6:20 a.m. to 5:30 p.m. or 6:00 p.m. (_see_ Compl. ¶ 8; Tr. at 8:19-9:2), an average of 11.66 hours.  The average total number of hours he worked per week would therefore be 75 hours, of which 35 hours are overtime.  However, because the Complaint alleges that Plaintiff "worked … about 74 hours per week" (Compl. ¶ 8), and the Amended Motion calculates Plaintiff's "actual damages" using "74 hours per week" (Pl. Mem. at 9), the undersigned calculates Plaintiff's overtime hours using this number.  _See_ Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

(JO), 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019) (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days).

Accordingly, the undersigned recommends Plaintiff be awarded **$5,000.00** in damages under Section 195(1) and **$5,000.00** in damages under Section 195(3).

### 4. *Liquidated Damages*

Under the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b); NYLL § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a). Because Defendants did not appear in this case, there is no showing of good faith, and liquidated damages are appropriate. *See Herrara v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Complaint seeks liquidated damages for both Plaintiff's FLSA and NYLL unpaid overtime claims, but the Amended Motion requests liquidated damages for the NYLL claim only. (*Compare* Compl. at 7, 8, *with* Ahn Aff. ¶ 6(c); Pl. Mem. at 12, 25-26.)

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$54,957.60** in liquidated damages for his NYLL overtime wages claim.

### 5. *Prejudgment Interest*

Plaintiff seeks prejudgment interest under the NYLL. (Compl. at 8.; Ahn Aff. ¶ 6(d); Pl. Mem. at 14-15.) Prejudgment interest is available for underpayments under the NYLL, in this case, the unpaid overtime claim. *See* NYLL § 198(1-a). Prejudgment interest is not available for wage statement or notice violations, or for liquidated damages. *Ying Ying Dai v. ABNS NY Inc.*, No. 18-cv-5170

(AMD)(RLM), 2020 WL 5820130, at *11 (E.D.N.Y. Sept. 29, 2020). A plaintiff may, however, seek prejudgment interest on any underpayment and also seek liquidated damages. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents.").

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where … damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Market Corp.*, No. 16-CV-05303, 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (citing *Fermin*, 93 F. Supp. 3d at 49); *see also Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015) ("A single reasonable intermediate date is the median date between the earliest and latest each [plaintiff's] NYLL claim accrued." (collecting cases)).

Plaintiff requests that the Court "use the midpoint of a plaintiff's employment as the appropriate, reasonable intermediate date for purposes of calculating prejudgment interest." (Pl. Mem. at 15 (internal quotation marks and citations omitted).) Because Plaintiff's start and end dates correspond exactly to the earliest and latest dates Plaintiff's NYLL claims accrued, the undersigned finds the proposed midpoint appropriate. Plaintiff began working for Defendants on December 31, 2017, and his last day of paid work was on December 29, 2018. The midpoint is therefore June 30, 2018.

Plaintiff's total overtime damages are $54,957.60. Prejudgment interest on those damages at a rate of nine percent per year is $4,946.18. That amount divided by 365 days in a year results in daily

interest of $13.55.  Accordingly, the undersigned respectfully recommends that Plaintiff be awarded prejudgment interest of $13.55 per day from June 30, 2018 through the entry of judgment.

> 6.    *Post-Judgment Interest*

Both the FLSA and NYLL provide that successful plaintiffs shall be allowed interest "on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); *see, e.g.*, *Fermin*, 93 F. Supp. 3d at 53.  Plaintiff seeks post-judgment interest on "all money awards (those awarded by the Court and requested in the sections of this motion above and below) in accordance with the provisions of 28 U.S.C. § 1961."  (Pl. Mem. at 16.)  Accordingly, the undersigned recommends that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

**B.    Attorneys' Fees and Costs**

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); NYLL § 663(1).  Plaintiff seeks $19,959.00 in attorneys' fees and $738.90 in costs.  (Pl. Mem. at 25.)

> 1.    *Attorneys' Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*,

658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citations omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (internal quotation marks and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09-CV-0451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299.

a. *Hourly Rate*

Some courts in this district have held that the appropriate range for a senior attorney in a labor law case is $300 to $400 per hour, while others have found that $450 is the proper upper limit of the range. *See Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020); *see also Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), *R&R adopted*, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (citing recent fee awards in FLSA cases of "$300 to 450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to 100 for legal support staff").

Plaintiff seeks $450 per hour for the work of his attorney, Ryan J. Kim. (Pl. Mem. at 20.) Kim graduated from law school in 2003, passed the New York, New Jersey, and Illinois bar exams, and is admitted to practice in Illinois and several federal district courts. (*Id.*) He provided a long list of wage

and hour and collective action cases he has pursued in Illinois, New York, and New Jersey.  (*Id.* at 20-22.)  Mr. Kim was recently awarded an hourly rate of $450 in this district.  *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *10 (E.D.N.Y. Mar. 9, 2021).  The undersigned therefore finds that his requested hourly rate of $450 is reasonable.

Plaintiff also requests hourly rates of $120 for paralegal work performed in this matter.  (*See* Ex. 5 to Kim Decl., "Fee Statement," Dkt. 22-1, at 1-7.)  This is at the higher end of the rates typically awarded in this district.  *See Gesualdi v. Nastasi & Assocs., Inc.*, No. 19-CV-2077 (JS)(AYS), 2021 WL 966326, at *2 (E.D.N.Y. Feb. 11, 2021), *R&R adopted*, 2021 WL 1115606 (E.D.N.Y. Mar. 24, 2021) (awarding $120 per hour for paralegals); *see also Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals in fee-shifting cases").  Plaintiff's fee statement includes time billed by paralegal Jia Choi, but Plaintiff has not included any description of Choi's credentials.  Plaintiff's counsel has previously been advised that motions for fees should include Choi's credentials.  *See, e.g.*, *Nam*, 2021 WL 878743, at *11.  The undersigned therefore respectfully recommends that Plaintiff be awarded at the lowest end of the scale for paralegals, and that Choi's rate be reduced to $70 per hour.

*b.   Reasonableness of Time Billed*

Plaintiff submitted attorney billing records which show a total of 50.00 hours billed from August 26, 2019 to May 14, 2021.[6]  Although individual time entries specify whether the work was done by counsel or the paralegal, the total number of hours performed by each is not provided.

Upon review of these records, the undersigned finds that several entries are excessive or include inappropriate administrative tasks.    For example, Plaintiff's counsel spent 2.00 hours on

---

[6] Plaintiff did not submit billing records for any work after the Amended Motion, including work related to the Inquest on July 15, 2021 and subsequent filings.

December 11, 2019 to "[d]raft request [for] certificate of default, attorney's declaration, certificate of the service," and 4.3 hours on May 13, 2020 to "[d]raft plaintiff's [first] motion for default judgment, affidavit, memorandum of the law etc."  (Fee Statement at 2, 3.)  However, the First Motion for Default Judgment is a boilerplate legal document (*see* Dkt. 8), the affidavit is a two-page summary of the procedural history of the case (*see* Dkt. 8-1), and the "memorandum of law" includes no references to case law or any legal reasoning, and instead largely recites Plaintiff's damages (*see* Dkt. 9).  Plaintiff separately billed 1.9 more hours for analyzing and revising Plaintiff's unpaid wage and damage calculations.  (*See* Fee Statement at 2 (Time Entries for February 24, 2020 and May 3, 2020).)  After filing this first memorandum of law, Plaintiff's counsel then filed an Amended Memorandum of Law, for which he billed an additional 0.3 hours to revise Plaintiff's damage calculations and 1.6 hours to revise the memorandum of law.  (*See* Fee Statement at 3 (Time Entries for July 20, 2020).)  The Amended Memorandum of Law still made no legal argument as to why Plaintiff was entitled to default judgment.  (*See* Dkt. 11.)

After the First Motion for Default Judgment was denied on the basis of improper service, Plaintiff's counsel started the process over again, billing 1.20 hours on March 25, 2021 to "[d]raft Request for Entry of Default," 3.30 hours on May 13, 2021 to "research case laws" regarding the motion, and 3.00 hours on May 13, 2021 and 2.60 hours on May 14, 2021 to draft the motion and memorandum of law.  (*See* Fee Statement at 6.)

Plaintiff's counsel also billed for excessive or inappropriate administrative items, for example, billing 0.2 hours on October 24, 2019 to "[s]ave filed docket" (Fee Statement at 1), and 0.5 hours on June 4, 2020 to "draft a notice of change of address and file it with the court" (Fee Statement at 3). The undersigned therefore finds that the hours billed on this matter were excessive and unreasonable and finds that a 30% across-the-board reduction in hours is appropriate.

### *c.   Calculation of the Presumptively Reasonable Fee*

Multiplying the reduced hours expended by the hourly rates set forth above, the presumptively

reasonable fees are set forth in the following table:

| Biller | Requested Rate | Reasonable Rate | Requested Hours | Reduction in Hours | Reasonable Hours | Total Fees (Reasonable Rate *x* Reasonable Hours) |
|---|---|---|---|---|---|---|
| Ryan J. Kim | $450 | $450 | 42.3 | 30% | 29.6 | $13,320.00 |
| Jia Choi | $120 | $70 | 7.7 | 30% | 5.4 | $378.00 |
| | | | | | **Total** | $13,698.00 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$13,698.00**

in attorneys' fees.

### 2.   <u>Costs</u>

Plaintiff seeks recovery of the $400.00 filing fee, and service of process cost $338.90.  (Pl.

Mem. at 25; *see also* Fee Statement at 7.)  The undersigned takes judicial notice of the filing fee.  *See Joe*

*Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22,

2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it).  Plaintiff seeks $100.00

for the original service on Defendants, which was deficient, and $10.00 in postage for mailing of the

original certificate of default to Defendants, although that mailing failed to include all the items

required by the Local Civil Rules.  (*See* Dkt. 12.)  The undersigned respectfully recommends that these

costs be denied.  Plaintiff requests $63.90 and $65.00 for the successful service of process in February

2021.  These costs are appropriate, and the undersigned recommends that they be granted.  The

undersigned therefore respectfully recommends that Plaintiff be awarded **$528.90** in costs.

## VI.   <u>Joint and Several Liability</u>

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly

and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s]

favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to … impose joint and several liability on each [defendant] for their respective violations of the wage laws." (internal quotation marks and citation omitted)).

Accordingly, the undersigned respectfully recommends that Sun Cleaners and Cho be held jointly and severally liable for their violations of the FLSA and NYLL.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Amended Motion be GRANTED, and that damages be awarded as follows:

- $54,957.60 for unpaid overtime

- $5,000.00 for failure to provide wage notices

- $5,000.00 for failure to provide wage statements

- $54,957.60 for liquidated damages

- $14,226.90 for attorneys' fees and costs

The undersigned further recommends that prejudgment interest be awarded at the rate of $13.55 from June 30, 2018 until the date of judgment, and that post-judgment interest be awarded from the date of entry of judgment.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to mail a copy of this Report and Recommendation to Defendants and file proof of service on the docket no later than February 24, 2022.

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   February 18, 2022
         Brooklyn, New York